1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE M. KRAMER,<br><br>            Plaintiff,<br><br>     v.<br><br>THE BANK OF AMERICA, N.A. Successor by Merger to BAC HOME LOANS SERVICING, LP, fka COUNTRYWIDE HOME LOANS SERVICING, LP., QUALITY LOAN SERVICE CORPORATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., FEDERAL HOME LOAN MORTGAGE CORPORATION, and DOES 1-10, inclusive,<br><br>            Defendants. | CASE NO. 1:13-CV-01499-AWI-MJS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY**<br><br>(Doc. 23) |

**I. INTRODUCTION**

      This is a mortgage related case brought by Plaintiff George M. Kramer against Defendants Bank of America, N.A., ("BANA"), Quality Loan Service Corporation, ("QLSC"), Mortgage Electronic Registration Systems, Inc., ("MERS"), and Federal Home Loan Mortgage Corporation, ("Freddie Mac"), collectively "Defendants."  Defendants move to dismiss the entirety of the complaint pursuant to Rule 12(b)(6). For the following reasons, Defendants' motion is GRANTED.

## II. FACTUAL BACKGROUND

The following information comes from Plaintiff's Complaint and its attached exhibits. On August 24, 2006, Plaintiff obtained a mortgage loan for property located at 529 Esgar Avenue, Modesto, California ("the Property"). The loan was secured by a Deed of Trust. The 2006 Deed of Trust identifies the lender as Aegis Wholesale Corporation, the Trustee as Commonwealth Land Title, and MERS as the beneficiary and as the nominee of the lender and the lender's successors and assigns. Compl. Ex. B. Aegis executed an undated allonge[1] to Plaintiff's promissory note, which made the promissory note payable to the order of Countrywide Home Loans, Incorporated. Compl. Ex. D.

Plaintiff argues that as of September 28, 2006, Freddie Mac was the owner of the mortgage. Compl. ¶30. Plaintiff bases this argument on a printout from MERS's website, which also identifies BANA (the successor to Countrywide Home Loans Servicing) as the loan servicer. Compl. Ex. C, at 7–9. However, on March 21, 2012, the Stanislaus County Recorder recorded an "Assignment of the Deed of Trust" that conveyed "all beneficial interest […] obligations therein and the money due" from MERS to BANA. Compl. Ex. E.

All of Plaintiff's mortgage payments were made to BANA.[2] In October 2011, Plaintiff obtained a mortgage loan modification from BANA and continued to make mortgage payments through April 2012. Compl. Ex. M, at 2.  Plaintiff stopped making mortgage payments in May 2012. *Id.* At that time, BANA representatives identifying themselves as "debt collectors" began calling Plaintiff daily and requesting he make mortgage payments. *Id.* In June 2012, Plaintiff was informed by BANA that he "may be eligible for another loan modification," but his application was later denied. *Id.*

---

[1] An allonge is "a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary (9th ed. 2009).

[2] "Plaintiff paid BANA for a period of six (6) years." Compl. ¶172. Plaintiff signed his Promissory Note on August 24, 2006. Compl. Ex. A.  BANA stopped accepting Plaintiff's mortgage payments in October 2012. Compl. Ex. M.

2

In August 2012, Plaintiff resumed making electronic mortgage payments to BANA, but could not make up the payments he had missed. Compl. Ex. M, at 3. During the months of August and September 2012, Plaintiff received letters labeled "Notice of Intent to Foreclose" from BANA. *Id.* In October 2012, Plaintiff attempted to make a mortgage payment. BANA returned the payment, ostensibly because "the electronic funds were not certified." *Id.* In November 2012, Plaintiff attempted to make a "double monthly payment," which BANA returned. *Id.*

On October 8, 2012, the Stanislaus County Recorder recorded a "Substitution of Trustee" (made by QLSC acting as BANA's attorney in fact) wherein QLSC replaced Commonwealth Land Title as the new Trustee under the Deed of Trust. Compl. Ex. F. On November 19, 2012, QLSC filed with the Stanislaus County Recorder a "Notice of Default and Election to Sell Under Deed of Trust." Compl. Ex. H.

On February 26, 2013, the Stanislaus County Recorder recorded a "Notice of Trustee's Sale," in which QLSC indicated that the Property would be sold at a public auction on March 25, 2013. Compl. Ex. I. On March 25, 2013, the Property was sold to Freddie Mac. On April 3, 2013, the Stanislaus County Recorder recorded the "Assignment of Deed of Trust." This document stated that QLSC, acting as BANA's attorney in fact, assigned the deed of trust and "all beneficial interest" to Freddie Mac. Compl. Ex. J. Also on April 3, 2013, the Stanislaus County Recorder recorded a "Trustee's Deed Upon Sale," in which QLSC (as Trustee) granted and conveyed the Property to Freddie Mac. Compl. Ex. K.

On September 16, 2013, Plaintiff filed this lawsuit. Plaintiff alleges nine causes of action: (1) declaratory relief; (2) wrongful foreclosure; (3) cancellation of trustee's deed; (4) quiet title; (5) negligence; (6) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); (7) violation of California Business & Professions Code § 17200 et seq. (Unfair Competition Law "UCL"); (8) quasi-contract; and (9) accounting.

### III. LEGAL STANDARD

A complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Id.* A party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *Parks School of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In making a 12(b)(6) determination, district courts have followed a two-step approach. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564–70 (2009). First, district courts should carefully examine the complaint to weed out any "merely legal conclusions resting on the prior allegations." *Id.* at 564. If an allegation is deemed "conclusory," it is entitled to no weight in the 12(b)(6) calculus. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Second, district courts should weigh the remaining facts and determine if they are sufficient to "nudge the claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. While a complaint "need not contain detailed factual allegations, it must plead enough facts to state a claim of relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Plausibility can be met even if a judge disbelieves a complaint's factual allegations. *See Iqbal*, 556 U.S. at 696 (stating "no matter how skeptical the court may be [...] 'Rule 12(b)(6) does not countenance [...] dismissals based on a judge's disbelief of a complaint's factual allegations.'"). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663, 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. A 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in

his or her complaint. *Scheuer v. Rhodes*, 414 U.S. 544, 555 (2007).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint. There are two exceptions to this general rule. First, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss […] [i]f the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them". Second, "under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (internal quotation marks and citations omitted); *see also In re Stac Electronics*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). In addition, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).[3]

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## IV. DEFENDANTS' MOTION TO DISMISS

### A. First Cause of Action – Declaratory Relief

### Defendants' Argument

Defendants contend that the Court must dismiss Plaintiff's claim for declaratory relief for

---

[3] Defendants request the Court take judicial notice of documents from Case No. 1:12-CV-01629-AWI-GSA, a factually similar case that was before this Court between 2012–2013. Defendants ask the Court to take judicial notice of that case's First Amended Complaint ("RJN Ex. A") and the Court's Order in *Newman v. Bank of New York Mellon*, 2013 WL 5603316 (E.D. Cal. 2013), which dismissed the FAC ("RJN Ex. B"). The Court grants Defendants' unopposed request and takes judicial notice of the documents because they are matters of public record and not generally subject to dispute. *See Sears*, 245 F.2d at 70; *Lee*, 250 F.3d at 688–89.

several reasons. First, Defendants argue Plaintiff lacks standing to contest violations of the

Pooling and Servicing Agreement ("PSA") that applies in this case. Second, Defendants argue that

Plaintiff lacks standing to challenge the March 21, 2012 assignment by MERS to BANA. Third,

Defendants argue Plaintiff's "robo-signing" allegations are underpled. Fourth, Defendants argue

that Plaintiff's claims against Freddie Mac contain no allegations of wrongdoing by Defendants.

**Plaintiff's Opposition**

Plaintiff argues several theories in opposition to Defendants' motion.  First, Plaintiff

argues he has standing to challenge the validity of the assignments of the Deed of Trust. Second,

Plaintiff argues defects in the chain of title void the trustee's sale of the Property. Third, Plaintiff

argues the robo-signing allegations indicate that BANA failed to verify the chain of title of

Plaintiff's note. Finally, Plaintiff argues Freddie Mac's behavior caused Plaintiff to question the

ownership of his note, which caused Plaintiff harm.

**Discussion**

*1. PSA Violation*

Plaintiff alleges that Defendants' violation of the PSA governing Freddie Mac's

"Multiclass Certificates REMIC Series 3201" Trust prevent either BANA or Freddie Mac from

collecting on the loan. Compl. ¶32. Plaintiff argues Defendants violated the PSA when they

transferred his loan into the Freddie Mac Trust after the closing date imposed by the PSA; as a

result, the loan was not securitized and Defendants cannot collect on it. *Id.*

Plaintiff admits he is not a party or a beneficiary to the PSA. Compl. ¶36. It is well settled

that mortgagees who are not parties to a PSA lack standing to allege violations of a PSA or to

otherwise bring claims on the basis that a PSA was violated. *See Newman*, 2013 WL 5603316, at

*3 (E.D. Cal. 2013); *Gilbert v. Chase Home Fin., LLC*, 2013 WL 2318890, at *3 (E.D. Cal. 2013);

*Sabherwal v. Bank of N.Y. Mellon*, 2013 WL 101407, at *7 (S.D. Cal. 2013); *Dinh v. Citibank,*

*N.A.,* 2013 WL 80150, *3–*4 (C.D. Cal. 2013); *Ramirez v. Kings Mortg. Servs.,* 2012 WL

5464359, *5–*6 (E.D. Cal. 2012); *Armstrong v. Chevy Chase Bank, FSB,* 2012 WL 4747165, *2–*3 (N.D. Cal. 2012); *Hale v. World Sav. Bank,* 2012 WL 4675561, *6–*7 (E.D. Cal. 2012); *Almutarreb v. Bank of N.Y. Trust Co., N.A.,* 2012 WL 4371410, *1–*2 (N.D. Cal. 2012); *Junger v. Bank of Am., N.A.,* 2012 WL 603262, at *3 (C.D. Cal. 2012).

Plaintiff attempts to sidestep case law by arguing "failure to securitize his Note makes it impossible" for Defendants to "enforce in any manner whatsoever." Compl. ¶36. Plaintiff's failure-to-securitize argument rests on a PSA violation. The Court rejects this argument because Plaintiff does not have standing to bring a claim based on a PSA violation. *Snell v. Deutsche Bank Nat. Trust Co.*, 2014 WL 325147, at *5 (E.D. Cal. 2014) (holding the majority position is that "plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA").

Due to Plaintiff's lack of standing, the Court rejects Plaintiff's claims to the extent that they are based on allegations of PSA violations.

### 2. Assignment by MERS

Plaintiff attacks the March 21, 2012, MERS to BANA assignment by arguing MERS lacked the requisite authority to make assignments. Compl. ¶42. Plaintiff alleges that MERS was not a "true pecuniary beneficiary" and therefore could not assign any interest to BANA. Compl. ¶¶43, 47. Defendants counter that Plaintiff cannot challenge the assignment because he signed the Deed of Trust that gave MERS the authority to make the assignment.

In the Deed of Trust's "DEFINITIONS" section, MERS is defined as "the beneficiary under this Security Instrument." Compl. Ex. B. Under the heading "TRANSFER OF RIGHTS IN THE PROPERTY," the Deed of Trust outlines MERS's authority as the beneficiary:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to,

the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Compl. Ex. B.

The Court has previously examined identical contractual language in a deed of trust and held that "where MERS acts as a beneficiary under a deed of trust, it has the right to assign its interest." *Hensley v. Bank of New York Mellon*, 1:10-CV-1316-AWI-SMS, 2011 WL 2118810, \*2–\*3 (E.D. Cal. 2011) (citing *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); *Benham v. Aurora Loan Servs.*, 2009 WL 2880232, at \*3 (N.D. Cal. 2009); *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334–35, (2008)). A plaintiff grants MERS the power to assign its interest as the nominee beneficiary when he signs the deed of trust. *See Ogilvie v. Select Portfolio Servicing*, 2012 WL 4891583, \*3–\*4, (N.D. Cal. 2012); *Herrera v. Fed. Nat. Mortgage Assn.*, 205 Cal. App. 4th 1495, 1498 (2012). Here, MERS had the authority to assign its beneficial interest to BANA because Plaintiff signed the Deed of Trust. As such, Plaintiff's argument that MERS lacked the authority to assign its interest to BANA fails.

### 3. Robo-Signing

Plaintiff further attacks the MERS to BANA assignment by alleging it was signed by Rene Rosales, a "robo-signer" who is not MERS's "Assistant Secretary," who therefore had no legal or corporate authority to execute the assignment. Compl. ¶¶48, 49, 51. Defendants argue that Plaintiff's robo-signing allegations are underpled.

The Court has considered this argument before. When a plaintiff alleges an assignment by MERS is invalid because the individual who signed the assignment is not a MERS employee, such allegations must be coupled with "at least an allegation that the signatory does not actually have authority to sign on behalf of MERS." *Newman v. Bank of New York Mellon*, 2013 WL 1499490, at \*4 (E.D. Cal. 2013). Otherwise, the allegation will be dismissed because the complaint is not pled with sufficient particularity. *See Id.*

At first blush, it would appear Plaintiff has satisfied this requirement. *Id.* However, Plaintiff's robo-signing allegations are conclusory and implausible. As direct support for his allegations that Rosales is a robo-signer, Plaintiff cites a United States Department of Housing and Urban Development Memorandum of Review that examined Bank of America's foreclosure operations. Compl. Ex. L. The Memorandum of Review is inapposite here because it does not discuss MERS's assignment practices. *Id.* Instead, the Memorandum of Review merely supports the proposition that robo-signers assisted **Bank of America's foreclosure** operations. *See Id.* Therefore, the Memorandum of Review fails to cure the conclusory nature of Plaintiff's allegations regarding Rosales' status as a non-MERS employee robo-signer.

On its face, the MERS to BANA assignment indicates that Rosales had authority to sign for MERS. *See* Compl. Ex. E. The signature block of the assignment reads "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC" underneath which is a signature, underneath which reads "Rene Rosales Assistant Secretary." *Id.* If Rosales lacked authority to sign the MERS to BANA assignment, MERS would be the victim of fraud. However, there is no indication that MERS objects or has objected to transfer its beneficial interest to BANA. The fact that MERS and BANA are represented by the same attorney and have each joined the motion to dismiss before the Court reflects the implausibility of Plaintiff's allegation that Rosales lacked authority. For these reasons, Plaintiff's robo-signing allegations fail.[4]

### 4. Claims Against Freddie Mac

Defendants argue Plaintiff's complaint fails to allege wrongdoing by Freddie Mac. In response, Plaintiff asserts that Freddie Mac's behavior caused him to seriously question the ownership of his note, which caused him harm. Pl.'s Opp'n at 20.

The complaint alleges Freddie Mac held the promissory note in September 2006 as

---

[4] The implausibility of Plaintiff's robo-signing allegations obviates the need to address Defendants' argument that Plaintiff lacks standing to contest the assignment because Plaintiff was not a party to the assignment transaction.

"Trustee for the Freddie Mac Multiclass Certificates 3201 series." Pl.'s Opp'n at 20; Compl. Ex. C. To support this contention Plaintiff cites what appears to be a printout from MERS's website contained within a "Securitization Compliance Analysis" report. Compl. Ex. C, at 7–8. The putative MERS printout identifies Bank of America, N.A. as the mortgage servicer and Freddie Mac as the investor. There is no mention of a 3201 series trust. Plaintiff contends Freddie Mac did not have any interest in the promissory note because there is no evidence the promissory note was transferred to the 3201 series trust. Compl. ¶¶30, 31. Plaintiff then confusingly argues there is no evidence that the 3201 series trust transferred the promissory note to MERS, and concludes any subsequent assignment by MERS is "a legal nullity." Pl.'s Opp'n at 21. As previously discussed, when Plaintiff signed the original Deed of Trust he agreed that MERS was the beneficiary and thereby granted MERS authority to assign its interest. *See Hensley*, 2011 WL 2118810, *2–*3. Accordingly, MERS had the authority to make the BANA assignment, which directly contradicts Plaintiff's obfuscatory Freddie Mac allegations. *See* Compl. Ex. B.

Plaintiff's allegations fail because they are not plausible. If Freddie Mac owned Plaintiff's promissory note in 2006 as Plaintiff contends, Freddie Mac would have been the victim of fraud when MERS assigned the note to BANA in 2012. It is highly unlikely that Freddie Mac would have subsequently purchased the Property from BANA in 2013 for $119,170.00 if BANA had fraudulently acquired the Property from Freddie Mac. *See* Compl. Ex. K. Indeed, there are no indications that Freddie Mac has objected to the 2012 MERS to BANA assignment. Additionally, Freddie Mac, BANA, and MERS are all represented by the same attorney and each join in the current motion to dismiss before the Court. Based on these circumstances, Plaintiff's Freddie Mac Claims fail to plausibly allege wrongdoing by Defendants.

**Conclusion**

In sum, the first cause of action fails to state a plausible claim. Dismissal of this cause of action is appropriate.

**B. Second Cause of Action – Wrongful Foreclosure**

Defendants argue Plaintiff's wrongful foreclosure claim must be dismissed because Plaintiff failed to allege tender, as is required to maintain a cause of action for wrongful foreclosure. Plaintiff argues tender is not a prerequisite to a wrongful foreclosure claim when an action attacks the validity of the underlying debt or the foreclosing entity's beneficial interest to foreclose.

The Court has previously held that a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Hensley*, 2011 WL 2118810, at *3 (citing *Abdallah v. United Sav. Bank,* 43 Cal. App. 4th 1101, 1109 (1996)). An action to set aside a foreclosure sale, unaccompanied by an offer to tender, does not state a cause of action. *Id.* (citing *Karlsen v. Am. Sav. & Loan Ass'n,* 15 Cal. App. 3d 112, 117 (1981)). The Court has identified the essential requisites of tender as: (1) an unconditional offer to perform, coupled with a manifested ability to carry out the offer; (2) a production of the subject matter of the contract; (3) the property tendered must not be less than what is due; and (4) if greater, there must be no demand for a return of the excess. *Valtierra v. Wells Fargo Bank, N.A.*, 2011 WL 590596, at *7 (E.D. Cal. 2011) (citing *Guy F. Atkinson Co. of Cal. and Subsidiaries v. C.I.R.,* 814 F.2d 1388, 1393 (9th Cir. 1987)).

Plaintiff claims he "is willing to pay his obligations on the Note to whomever is legally entitled to payments." Compl. ¶100. Although Plaintiff indicates his **willingness** to offer tender, his statement is not coupled with a manifested **ability** to carry out the offer, thus he has not pled tender with the level of specificity needed to satisfy the first tender requirement described in *Valtierra. See Valtierra*, 2011 WL 590596, at *7.

Plaintiff contends he is excused from offering tender because it is inequitable to do so, citing *Sacchi v. Mortgage Elec. Registration Sys., Inc.*, 2011 WL 2533029, at *10 (C.D. Cal. 2011). Compl. n.17. The *Sacchi* court held that tender is not required where a plaintiff alleges

foreclosure in violation of Cal. Civ. Code § 2923.5, which requires a mortgage servicer contact the borrower "and explore options for the borrower to avoid foreclosure" prior to initiating the foreclosure process. *Sacchi*, 2011 WL 2533029, at *10; Cal. Civ. Code § 2923.5(a)(1)(A)(2). The *Sacchi* exemption does not apply to Plaintiff because he has not alleged a violation of Section 2923.5.

Plaintiff further argues he is not required to offer tender because his action attacks the validity of the underlying debt, and such an offer would constitute an affirmation of the debt. Plaintiff cites *Onofrio v. Rice* as support. 55 Cal. App. 4th 413 (1997). Onofrio brought an action against a foreclosure consultant, Rice, who lent her money at an annual rate of 35 percent to avoid defaulting on her mortgage in exchange for a Trust Deed. *Id.* However, Rice never gave Onofrio a statutorily required foreclosure consultant contract. *Id.* Onofrio eventually defaulted on her payments to Rice, and Rice purchased the home at a foreclosure sale. *Id.* The *Onofrio* court discussed several theories which could excuse an offer of tender and held that on the facts in that case it would be inequitable to require Onofrio to offer tender prior to filing her claim against Rice. *Id.* at 425.

Plaintiff's factual situation is distinguishable from *Onofrio*. In 2006 Plaintiff signed a promissory note in which he borrowed $240,000.00 to purchase the Property at issue. Compl. Ex. A. Plaintiff has made no plausible allegations that challenge underlying validity of the debt he contractually agreed to incur in 2006, and has not alleged he was charged usurious interest rates. Therefore, *Onofrio* is of no help to Plaintiff. The argument that Plaintiff should be excused from offering tender because it would affirm his mortgage debt is without merit.

Finally, Plaintiff contends that the tender requirement does not apply when a plaintiff challenges the beneficial interest held by the foreclosing entity, citing *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *7 (E.D. Cal. 2011). Pl.'s Opp'n at 22. The *Vogan* court held that granting the defendants' motion to dismiss would be inequitable because the plaintiffs had alleged

with specificity that the foreclosing entity lacked standing to foreclose in the first place. 2011 WL 5826016, at *7. Plaintiff challenges BANA's standing to foreclose on the Property by alleging that BANA wrongfully obtained its interest in the Property. Compl. ¶¶65, 115–120. As previously discussed, Plaintiff's allegations that BANA fraudulently obtained its interest from Freddie Mac are not plausible. Accordingly, the Court rejects Plaintiff's argument that he is excused from the tender requirement on the basis that he challenges BANA's standing to foreclose.

An offer of tender is requisite to a wrongful foreclosure claim. Plaintiff has failed to adequately offer tender and does not qualify for an exception to the tender requirement. Accordingly, Plaintiff cannot maintain his cause of action and his wrongful foreclosure claim is dismissed.

**C. Third Cause of Action – Cancellation of Trustee's Deed**

Plaintiff argues BANA lacked the authority to name QLSC as Trustee, therefore QLSC's subsequent Notice of Default, Notice of Sale, and Trustee's Deed of Sale are void and should be cancelled pursuant to Cal. Civ. Code § 3412. Pl.'s Opp'n at 27. Section 3412 provides for the cancellation of a written instrument when there is "reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." Cal. Civ. Code § 3412.

To this end, Plaintiff alleges BANA was the not the "Lender" when the substitution was executed and thus BANA's substitution of QLSC as Trustee "violated Cal Civ. Code § 2934(a) [sic]" and the original Deed of Trust. Compl. ¶¶66–76. Plaintiff argues that BANA's substitution of QLSC violated Provision 24 of the Deed of Trust, which states "Lender, at its option, may from time to time substitute a successor Trustee". Compl. Ex. B at 16.

As previously discussed, the Court deems implausible Plaintiff's allegations challenging the validity of the MERS to BANA assignment. Likewise, the Court discounts Plaintiff's allegations that BANA was not the Lender and thus lacked authority to substitute QLSC as the

Trustee. Furthermore, while Cal. Civ. Code § 2934(a) does **not** exist, § 2934a **does**, and it expressly authorizes a beneficiary under a deed of trust to substitute the trustee. Cal. Civ. Code § 2934a(a)(1). Provision 24 of the Deed of Trust explicitly granted this power to BANA. Compl. Ex. B, at 16. Thus, BANA had the authority to substitute QLSC as the Trustee, and properly did so. As such, the Court deems implausible Plaintiff's allegations that QLSC lacked authority to issue the Trustee's Deed of Sale because it was not a proper Trustee. Accordingly, the Court dismisses Plaintiff's cancellation cause of action.

**D. Fourth Cause of Action – Quiet Title**

Plaintiff seeks to quiet the title to the Property by arguing that the Trustee's Sale was void. Plaintiff argues the Trustee's Sale was the product of fraud and that a promissory note split from a deed of trust is unenforceable. Compl. ¶¶133–136; Pl.'s Opp'n at 28.

Plaintiff's "splitting-the-note" argument fails as a matter of law. Plaintiff misguidedly relies on *In Re Veal* to support his argument. 450 B.R. 897 (B.A.P. 9th Cir. 2011). In *Veal* the Ninth Circuit applied Illinois law, which recognizes the splitting-the-note theory. *Id.* California's non-judicial foreclosure law rejects the splitting-the-note theory. *See Ghuman v. Wells Fargo Bank, N.A.*, 2013 WL 552097, *6–*7 (E.D. Cal. 2013) (explaining that a beneficiary retains the right to foreclose when a promissory note has been sold or otherwise transferred as part of a securitization process); *Lane*, 713 F. Supp. 2d at 1098–99 (holding that California's non-judicial foreclosure process does not require a beneficial interest in both the promissory note and deed of trust); *Shuster v. BAC Home Loans Servicing, LP*, 211 Cal. App. 4th 505, 512 (2012) ("California's statutory nonjudicial foreclosure scheme (Civil Code §§ 2924–2924k) does not require that the foreclosing party have a beneficial interest in or physical possession of the note"); *Debrunner v. Deutsche Bank Nat. Trust Co.*, 204 Cal. App. 4th 433, 440–42 (2012) (holding that the foreclosing party need not possess the promissory note). Thus, Plaintiff's splitting-the-note argument fails to support his quiet title claim.

Furthermore, Plaintiff must allege tender to bring a quiet title action. *Halajian v. Deutsche Bank Nat. Trust Co.*, 2013 WL 593671, at *9 (E.D. Cal. 2013); *Kelley v. Mortgage Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009); *Distor v. U.S. Bank, NA*, 2009 WL 3429700, at *6 (N.D. Cal. 2009); *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). As previously discussed, Plaintiff has not adequately offered tender. Accordingly, Plaintiff's quiet title claim is dismissed.

**E. Fifth Cause of Action – Negligence**

Plaintiff alleges Defendants owed him a duty "to follow California law with regard to enforcement of monetary obligations" and not take action against him when they do not have authority to do so. Compl. ¶140. Plaintiff alleges three breaches of that duty: (1) Defendants wrongfully assigned the promissory note and Deed of Trust; (2) Freddie Mac and BANA breached their duty of care by violating the terms of the PSA; and (3) BANA breached its duty of care in its handling of Plaintiff's loan modification attempts. Compl. ¶¶140–145.

The Court dismisses Plaintiff's negligence claim where the breach rests on allegations that Defendants wrongfully assigned the promissory note and Deed of Trust. As previously discussed, when Plaintiff signed the original Deed of Trust he agreed that MERS was the beneficiary and thereby granted MERS authority to assign its interest. *See Hensley*, 2011 WL 2118810, *2–*3. MERS thus had the authority to make the BANA assignment, which undercuts the basis for Plaintiff's allegations of breach in his negligence claim. This gave BANA authority to substitute QLSC as Trustee, and renders moot Plaintiff's challenge to QLSC's subsequent assignment to Freddie Mac pursuant to the Trustee's Deed Upon Sale.

Similarly, the Court dismisses Plaintiff's negligence claim to the extent any alleged breach rests on PSA violations because violations of the PSA cannot form the basis of a claim. *See Newman*, 2013 WL 5603316, at *3; *Gilbert*, 2013 WL 2318890, at *3; *Hale,* 2012 WL 4675561, *6–*7. Accordingly, the Court dismisses Plaintiff's negligence claims where the breach rests on

PSA violation allegations.

This leaves the Court to consider Plaintiff's final theory of negligence, which asserts that BANA violated its duty of care in its handling of Plaintiff's loan modification efforts. Compl. ¶143. This raises the issue of whether BANA owed Plaintiff a duty with regard to its loan modification process. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Ragland v. U.S. Bank Nat'l Assn.,* 209 Cal. App. 4th 182, 206 (2012); *Nymark v. Heart Fed. Sav. & Loan Assn.,* 231 Cal. App. 3d 1089, 1096 (1991). As this Court held in *Newman*, renegotiation and loan modification are traditional money lending activities. *Newman*, 2013 WL 5603316, at *6 (citing *Morgan v. U.S. Bank Nat'l Ass'n*, 2013 WL 684932, at *3 (N.D. Cal. 2013); *Armstrong v. Chevy Chase Bank, FSB*, 2012 WL 4747165, at *4 (N.D. Cal. 2012); *Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. 2012)).

Plaintiff alleges that during a June 2012 telephone call to Bank of America he was informed that he "may be eligible for another loan modification" (Plaintiff previously obtained a loan modification in October 2011). Compl. ¶¶77, 82. However, during a telephone call between "a BANA representative and Plaintiff in June 2011 [sic]" Plaintiff was told his loan modification application was denied because the loan exceeded the value of the Property. Compl. ¶83. Plaintiff claims such denials were BANA's standard operating procedure. Compl. n.16.

The Court recognizes a duty of care during the loan modification process upon a showing of either a promise that a modification would be granted or the successful completion of a trial period. *Newman*, 2013 WL 5603316, at *7. Neither of these elements are present here. Plaintiff does not allege BANA promised a loan modification and does not plead facts showing he entered a trial period with BANA after he stopped making mortgage payments in May 2012. Therefore, Plaintiff has not adequately alleged that BANA breached a duty of care. Dismissal is appropriate.

**F. Sixth Cause of Action – FDCPA**

Defendants argue Plaintiff's FDCPA claim fails for two reasons. First, the FDCPA does not apply here because foreclosure activity does not qualify as "debt collection" within the meaning of the act. Second, the FDCPA does not apply here because Defendants do not qualify as "debt collectors" under the act. Plaintiff argues Defendants are debt collectors under the FDCPA because their principal purpose was to collect debt and payments. Additionally, the Fourth, Fifth, and Sixth Circuits hold that foreclosure is a form of debt collection under the FDCPA.

Plaintiff's FDCPA claim is rooted in the notion that Defendants are not the correct entities to foreclose or collect pursuant to the promissory note and the Deed of Trust. This claim is based on the same theories that underlie the first cause of action. For the same reasons that the first cause of action fails, this claim also fails. Dismissal is appropriate.[5] *See Newman*, 2013 WL 5603316, at *3; *Gilbert*, 2013 WL 2318890, at *3; *Hale,* 2012 WL 4675561, *6–*7; *Hensley*, 2011 WL 2118810, *2–*3.

**G. Seventh Cause of Action – UCL**

**Defendants' argument**

Defendants argue Plaintiff's UCL claim should be dismissed for two reasons. First, Plaintiff lacks standing to sue under the UCL. Second, Plaintiff has failed to allege any wrongful conduct, which is required to maintain a UCL action.

**Plaintiff's opposition**

Plaintiff's UCL claim rests on the following allegations of unlawful conduct by Defendants: (1) violating "Cal Penal Code § 532(f)(a)(4)" [sic][6] by  executing and recording false documents; (2) executing and recording documents without legal authority to do so; (3) violating

---

[5] The Court need not address whether Defendants are "debt collectors" or if foreclosure is "debt collection" under the FDCPA.

[6] California Penal Code § 532(f)(a)(4) does **not** exist, but Penal Code § 532f(a)(4) **does**. Given that Plaintiff's counsel made the same typographical error in his filings in *Newman*, 2013 WL 5603316, the Court admonishes counsel to proofread his papers before filing them.

17

Cal. Civ. Code § 1905 by failing to disclose the principal for which documents were being recorded and executed; (4) demanding and accepting payments for non-existent debts; (5) violating the "security first" rule; (6) making negative reports to credit bureaus without legal authority; (7) wrongfully foreclosing on Plaintiff's property; and (8) other deceptive business practices. Compl. ¶155.

**Legal Standard**

The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009). A private person has standing to bring a UCL claim when the person: (1) establishes a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e. economic injury; and (2) shows that the economic injury was the result of, i.e. caused by, the unfair business practice that is the gravamen of the claim. *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011); *see also Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1086–87 (Cal. 2010).

For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable [...] and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Super. Ct.*, 826 P.2d 730, 734 (Cal. 1992). Thus, a "defendant cannot be liable under [the UCL] for committing 'unlawful business practices' without having violated another law." *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

For claims based on "unfair" practices brought by consumers, there is a split of authority and at least three different methods for determining whether a business practice is "unfair": (1) the "balancing test" in which the impact on the victim is balanced against the reasons, justifications, and motives of the wrongdoer; (2) the "tethered test" whereby an allegedly violated public policy is tethered to specific constitutional, statutory, or regulatory provisions; and (3) the "section 5 test" which adopts the factors that determine whether Section 5 of the Federal Trade Commission Act

has been violated, i.e. a substantial consumer injury, the injury is not outweighed by countervailing benefits to consumers or competition, and the consumers could not have reasonably avoided the injury. *See In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1417–18 (2012); *Davis v. Ford Motor Credit Co., LLC*, 179 Cal. App. 4th 581, 583–88 (2009).

For claims based on "fraudulent conduct," the UCL "does not refer to the common law tort of fraud [...]." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008). A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 848 (2009). Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

**Discussion**

California Penal Code Section 532f(a) reads:

> A person commits mortgage fraud if, with the intent to defraud, the person does any of the following: [...] (4) Files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Cal. Pen. Code § 532f(a).

Plaintiff argues Defendants violated Section 532f(a)(4) because the assignments of the Property and promissory note were invalid. As previously discussed however, such allegations are implausible and therefore cannot form the basis of a UCL claim. By this reasoning, Plaintiff's allegations that Defendants executed and recorded documents without authority, demanded payment for "non-existent" debts, made negative reports to credit bureaus without legal authority, acted as a beneficiary without legal authority, and wrongfully foreclosed on the Property also fail to provide adequate bases upon which a UCL claim may rest.

Plaintiff alleges Defendants violated California Civil Code § 1905, "Modification of Contract" which reads in its entirety: "A lender for exchange cannot require the borrower to fulfill

19

his obligations at a time, or in a manner, different from that which was originally agreed upon." Cal. Civ. Code § 1905. Plaintiff alleges Defendants failed to "disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code § 1905". Compl. ¶155. The Court fails to understand Plaintiff's argument based on the statutory authority cited.

California Civil Code § **1095** reads: "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Cal. Civ. Code § 1095. This statutory authority elucidates Plaintiff's argument, but does not save it.[7] Plaintiff's complaint establishes that QLSC (the only attorney in fact mentioned in the complaint) complied with the statutory requirements of § 1095 when it assigned the Deed of Trust to Freddie Mac. *See* Compl. Ex. J. Thus, Plaintiff's argument that Defendants violated § 1095 fails as a basis upon which a UCL claim may rest.

Finally, Plaintiff alleges Defendants violated the "Security First Rule." Compl. ¶155. The Security First Rule is embodied in California Code of Civil Procedure § 726(a). *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1202 (S.D. Cal. 2010); *Security Pac. Nat'l Bank v. Wozab*, 800 P.2d 557, 561 (Cal. 1990). The "Security First Rule" requires a secured creditor to proceed against the security before enforcing the underlying debt. *Id.* Here, there is no explanation of how the Security First Rule was violated or even implicated in this case, rather there is simply an unadorned legal conclusion. Because no violation of this rule is apparent, the Security First Rule cannot serve as the basis for a UCL claim in this case.

In sum, the seventh cause of action fails to state a viable claim. Dismissal of this cause of action is appropriate.

**H. Eighth Cause of Action – Quasi Contract**

This cause of action is based on the theory that Defendants received loan payments from Plaintiff even though they had no interest that would entitle them to the payments. This claim is

---

[7] Once again, the Court admonishes Plaintiff's counsel to proofread his work.

based on the same theories that underlie the first cause of action. For the same reasons that the first cause of action fails, this claim also fails. Dismissal is appropriate. *See Newman*, 2013 WL 5603316, at *3; *Gilbert*, 2013 WL 2318890, at *3; *Hale,* 2012 WL 4675561, *6–*7; *Hensley*, 2011 WL 2118810, *2–*3.

**I. Ninth Cause of Action – Accounting**

Defendants argue that no accounting is required by Defendants because no fiduciary relationship exists between Defendants and Plaintiff, and Defendants owe Plaintiff no debt. Plaintiff contends a fiduciary relationship that gives rise to a duty to account exists between him and Defendants. Plaintiff argues that a fiduciary relationship exists for the same reasons that Plaintiff relies upon in his claims for negligence and illegal assignment of the deed of trust.

Plaintiff alleges that Defendants owe him a fiduciary duty, that Defendants' fraudulent actions caused Plaintiff to pay BANA for six years even though the money was not owed to BANA, and that an accounting is necessary in order for Defendants to return all money paid to them. Compl. ¶¶171, 172. These allegations do not state a claim.

A cause of action for an accounting may be brought to compel the defendant to account to the plaintiff for money or property where: (1) a fiduciary relationship exists between the parties; or (2) even though no fiduciary duty exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013). Here, neither criteria is met. First, there are no allegations that adequately establish the existence of a fiduciary relationship between Plaintiff and Defendants. Lenders and loan servicers generally are not fiduciaries of a borrower. *See Lobato v. Acqura Loan Servs.*, 2012 WL 607624, at *6 (S.D. Cal. 2012); *Slipak v. Bank of Am., N.A.*, 2011 WL 5526445, at *2 (E.D. Cal. 2011). Second, as discussed above, Plaintiff does not state any viable causes of action that would invalidate BANA's collection of money from Plaintiff. Thus, the complaint's stated basis for demanding an accounting is insufficient. *See Union Bank v. Superior Ct.*, 31 Cal. App. 4th

573, 593–94 (1995). Finally, the regular payments under a deed of trust over a six year period do not appear to be so complicated that an accounting is necessary. *See Jolley*, 213 Cal. App. 4th at 910. Dismissal of this cause of action is appropriate.

**V. ORDER**

Accordingly, the Court ORDERS:

1.  Defendants' motion is GRANTED.

2.  Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.

Dated:   April 14, 2014            _____

                                      SENIOR  DISTRICT  JUDGE